RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California Bar No. 112520
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Email: Melanie.Pierson@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>v.<br><br>SUMMER WANG,<br>　　　　Defendant. | Case No. 23cr930-RSH<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**<br>　**1. TO COMPEL DISCOVERY**<br>　**2. TO FILE FURTHER MOTIONS**<br><br>DATE: June 23, 2023<br>TIME: 2:00 p.m. |

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Randy S. Grossman, Assistant U.S. Attorney Melanie K. Pierson, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery and to File Further Motions. Said response is based on the files and records of the case.

DATED: June 12, 2023　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　RANDY S. GROSSMAN
　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　/s/Melanie K. Pierson
　　　　　　　　　　　　　　　Assistant U.S. Attorney

I.
STATEMENT OF THE CASE

On June 8, 2023, a complaint was filed, charging defendant Chin M. Wang, aka Summer Wang, with Conspiracy, in violation of Title 18,

United States Code, Section 371; Sale of Goods Imported Contrary to Law, in violation of Title 18, United States Code, Section 545; Illegal Trafficking in Wildlife, in violation of Title 16, United States Code, Section 3372 and 3373; Sale of an Endangered Species, in violation of Title 16, United States Code, Sections 1538 and 1540, a Criminal Forfeiture. On May 12, 2023, Wang was arrested pursuant to a warrant based on the complaint, and entered a plea of not guilty at her arraignment on May 15, 2023.

On May 16, 2023, a federal grand jury in the Southern District of California returned a five-count indictment, charging the defendant with an additional count charging the Sale of an Endangered Species, in addition to the same charges in the complaint. The defendant entered a plea of not guilty to the indictment on May 18, 2023, and a hearing on all motions was set for June 23, 2023.

On June 12, 2023, the defendant filed motions to Compel Discovery and to File Further Motions. The United States responds to those motions herein.

## II.

### STATEMENT OF FACTS

In September of 2021, a Cooperating Individual (CI) began communicating with Wang. In a chat entitled "Fish Maw[1]," on September 19, 2021, Wang told the CI that she had already sold 280 Totoaba swim bladders and only had 120 bladders left. Wang offered to sell those 120

---

[1] "Fish maw" is how the Chinese refer to swim bladders of fish.

*Response in Opposition to Motions to Compel*                                                                                                                               23cr930-JSH
*Discovery and File Further Motions*

bladders to the CI. Wang sent the CI photos of wildlife that she was offering for sale, including *Totoaba* and protected sea cucumbers, along with prices. During the communications, Wang told the CI that she was in South America on a business trip.

On September 23, 2021, by text, the CI received a price list for the *Totoaba* swim bladders. The text offered 70 small bladders for $9200 each (150-200 grams), 30 medium bladders (200-300 grams) for $11,000 each, and 20 large bladders (300-400 grams) for $12,500 each, for a total of $1,224,000 for all 120 bladders. Payment in the form of three cashier's checks for $250,000 each and the remainder in cash. Wang advised that she would be arriving in San Diego on September 26, 2021, sent her flight information, and requested that the CI pick her up at the airport.

On September 26, 2021, Wang arrived in San Diego and was met by the CI, after which they went to the Fish Market restaurant and discussed potential transactions. Their conversations were recorded. Wang offered $500,000 worth of bladders, but they reached agreement for $250,000 worth of bladders. Wang said that the following day (Sept 27th), she would go to the warehouse and prepare two batches of *Totoaba* bladders for sale, and they could do the transaction the next day (Sept 28th).

On September 28, 2021, the CI met Wang in the parking lot of a McDonalds in Chula Vista. Wang was in a white rental van. Wang told the CI that she had the bladders in the van. She said they should get in the van because they couldn't do "that kind of business" outside. She advised that she had bodyguards in three cars nearby to ensure that it was safe.

The CI entered the van with Wang, and purchased 23 swim bladders of assorted sizes for $247,000. While in the van, Wang said she had a total of $2 million worth of *Totoaba* bladders but she had brought only about $250,000 worth, in various sizes. Wang received a cashier's check for $70,000 and cash for the balance.

An undercover agent (UC) met with Wang on May 12, 2023, in Carlsbad, ostensibly to purchase $1 million worth of *Totoaba* bladders. Wang agreed to sell the bladders but stated that she did not want to produce the bladders until the funds had transferred, and she described how she would like the transfers to her account to be made. The conversation was recorded by the UC. Thereafter, Wang was placed under arrest.

III

STATUS OF DISCOVERY

The United States incorporates herein its report on the status of discovery, filed on June 12, 2023. The parties are continuing to meet and confer to ensure that all appropriate discovery is produced in a timely manner.

IV.

POINTS AND AUTHORITIES

A. THE GOVERNMENT HAS AND WILL COMPLY WITH RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE. ANY ADDITIONAL DISCOVERY DEMANDS OF THE DEFENDANT SHOULD BE DENIED.

The Government, to date, has provided discovery consisting of approximately over 444 pdfs and videos. The discovery provided to date is in excess of that required by Rule 16 of the Federal Rules of Criminal Procedure. The Government will continue to comply with the rules

concerning discovery. The defendant's specific requests are discussed below.

1. The Government Has Already Disclosed Information Subject to Disclosure under Rule 16(a)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

The Government has already disclosed the written and recorded statements of the defendant, as well as the substance of any relevant oral statements made by defendants in response to questions by Government agents. After her arrest, the defendant invoked her right to remain silent, so no post-arrest statements exist.

Although the defendant is not entitled to summaries of oral statements of the defendant made to persons not known by her to be Government agents, and the memorialization of any such statements in a written report does not make them discoverable as written statements of the defendant, *United States v. Hoffman*, 794 F.2d 1429, 1432, n.4 (9th Cir.1986), the United States has disclosed the defendant's statements to the CI, and will disclose the defendant's statements to the UC, once the recording is received under chain of custody.

2. The Government Will Comply with Rule 16(a)(1)(D).

The Government will provide the defendant with a record of any prior convictions. Once the witnesses the government intends to call in its case in chief are identified, records of any evidence of prior convictions for those individuals will be disclosed.

The Government is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its

possession that is material to the issue of guilt or punishment, as well as its duty under Giglio v. United States, 405 U.S. 150 (1972) to provide information on any benefits provided to Government witnesses in exchange for their testimony and impeachment material. The Government agrees to provide this information at least one week prior to trial, after all the trial witnesses have been identified.

3. The Government Will Comply with Rule 16(a)(1)(E).

The Government will permit the defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within the possession, custody, or control of the Government, and which are material to the preparation of the defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the defendant, and agrees to preserve such evidence during the pendency of this proceeding.

The defendant is not entitled to all evidence known or believed to exist which is, or may be favorable to the accused, or which pertains to the credibility of the Government's case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> "[T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id., 611 F.2d at 774-775 (citations omitted).

See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government not required to create exculpatory material

that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure). All physical evidence collected to date will be preserved.

4. The Government Will Comply with Rule 16(a)(1)(F)

The Government will provide the defendant with the results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession of the Government that have been performed to date, and will continue to provide any further such reports that by the exercise of due diligence may become known to the attorney for the Government and are material to the preparation of the defense or are intended for use by the Government as evidence-in-chief at the trial.

Scientific testing is being performed on the wildlife involved in this case, and the results will be disclosed to the defense as soon as they are received by the government.

5. The Government Will Comply with Rule 16(a)(1)(G)

Reports of the expert testing of the wildlife that will be prepared will be disclosed as soon as the report is received. The *curriculum vitae* of the expert witness (DNA forensic scientist) will be disclosed after that person's identity is known. Additionally, the recorded statements of the defendant in the process of being translated by a certified interpreter. When those transcripts are completed, the

Government will make the appropriate expert disclosures about those individuals as well.

6. Jencks Material

Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies on direct examination. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.), cert. denied, 454 U.S. 902 (1981). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

As a practical matter, the Government has disclosed the reports of the investigation, so advance Jencks material (with the exception of transcripts of grand jury testimony) has already been provided.

7. Prior Similar Act Evidence

Other illegal importations and sales of wildlife conducted by the defendant during the period of the conspiracy are considered to be uncharged overt acts. It has long been held that overt acts not specifically named in the indictment are nonetheless admissible. Houston v. United States, 217 F. 852 (9th Cir. 1914).

In United States v. Soliman, 813 F. 2d 277, 279 (9th Cir.1987), the court held that a summary chart of 102 fraudulent insurance claims was admissible at the defendant's trial for three counts of mail fraud, in

the face of a defense challenge that they were "other crimes" evidence under Rule 404(b) of the Federal Rules of Evidence. The court noted that "evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." In Soliman, the other events were direct evidence of the scheme to defraud in the mail fraud counts. In this case, the evidence of other importations and sales of wildlife, including *Totoaba*, is direct evidence of the conspiracy to illegally import this type of product. The evidence of the other transactions can be found in the written and recorded statements of the defendant, which have been disclosed. If the court determines that such statements are not inextricably intertwined with the offenses charged, the government hereby provides notice of its intent to introduce such statements as evidence of knowledge, intent and absence of mistake or accident, pursuant to Rule 404(b) of the Federal Rules of Evidence.

8. Henthorn Material

The Government will conduct a review of the personnel files of the federal agents involved in the case, and any impeachment material falling within the purview of United States v. Henthorn, 931 F.2d 29 (9th Cir.1991) will be disclosed.

9. Impeachment Information

The defendant has requested various categories of impeachment evidence, including bias or motive to lie, evidence of criminal investigation or convictions, and evidence affecting perception. The Government has disclosed the evidence currently in its possession that

falls into this category.  The Government will continue to disclose such evidence in compliance with its continuing obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972) no later than one week before trial, when the witnesses for trial have been identified.

10. <u>Informants and Cooperating Witnesses</u>

The defendants further seek disclosure of the names, addresses criminal record and location of informants. The defense has been provided with reports of the statements of individuals who provided information about the offenses at issue, without naming those persons. In <u>United States v. Gonzalo Beltran</u>, 915 F.2d 487, 488-89 (9th Cir.1990), the Ninth Circuit specified three factors that the court should consider in deciding whether to order the Government to disclose the identity of an informant. Those factors are: (1) the degree of the informant's involvement in the criminal activity, 2) the relationship between the defendant's asserted defense and the likely testimony of the informant, and (3) the government's interest in non-disclosure. In this case, the informant is a tipster with no involvement in the offense. The Government's interest in non-disclosure stems from an interest in potentially using these individuals as a source for future investigations. One of the sources has expressed fears regarding personal safety, given that Wang claimed to have brought three bodyguards to the initial transaction. The burden is on the defense to show that there is a relationship between the expected testimony of the informant and the defense to be raised at trial. <u>United States v. Johnson</u>, 886 F.2d 1120, 1122 (9th Cir. 1989).  The defense has made no assertion whatsoever that the informant's testimony is relevant to any defense

that might be mounted. Accordingly, the United States objects to an order requiring the disclosure of the name and address of the informant at this time.

11. Evidence Relevant to Sentencing

The government has provided full discovery in this case of all information in its possession relating to the calculation of the base offense level, any specific offense characteristics, the defendant's role and will shortly provide the defendant's criminal history . Absent a more specific request for information, the government believes it has fully complied with this request.

12. Witness Names and Addresses

There is no requirement in a non-capital case for the Government to supply the defense with a list of witnesses it expects to call at trial. United States v. Thompson, 493 F. 2d 305, 309 (9th Cir. 1974), cert. denied, 419 U.S. 835 (1974).

As a practical matter, the defendant has been provided with the agents' reports, which provide the names and often the addresses of the known witnesses to date, with the exception of the CIs.

B. FURTHER MOTIONS

The Government has no objection to the filing of further motions, so long as those new motions are based on newly disclosed evidence, or the defendant provides an adequate explanation of why the motions could not be filed in a timely manner. The Government requests that the court not issue an order permitting the filing of all additional motions, but

instead review each request for further motions on its own merit.

IV.
CONCLUSION

The United States respectfully requests that the court deny the motions to compel discovery and file further motions, to the extent they are opposed herein.